# NORWALK IRON WORKS COMPANY, Appellant, v. ST. LOUIS COUNTY BANK, Respondent.

St. Louis Court of Appeals, April 2, 1912.

1. CHATTEL MORTGAGES: Sales: Property Owned by Third Person: Appearance of Ownership in Person Conveying. While mere possession of personal property belonging to another confers no power to mortgage it, yet where a vendor has voluntarily placed a vendee in possession of property as though he owned it and thus put it in his power to treat it as his own in dealing with others, and a third person has purchased it or loaned money on it, in reliance upon an appearance of ownership in the vendee, the sale or mortgage will be upheld, as against the vendor.

2. ———: ———: ———: ———: Priorities. Where personal property was leased, pursuant to an unrecorded written contract, providing that the lessee should pay the lessor a stipulated amount in installments, and upon the final installment being paid, absolute title should vest in the lessee, and, before the full amount had been paid, the lessee, who was in possession, executed a mortgage on the property to a third

person who had no knowledge of said contract, the mortgage took precedence over the lien of the lessor under the conditional sale.

3. **MORTGAGES AND DEEDS OF TRUST: Chattel Mortgages: Fixtures: Property Covered by General Description.** A heavy machine, built into a factory by being permanently bolted to a foundation set into the earth for that purpose, and otherwise so connected with the structure of the plant as to render it an appurtenance thereof, is regarded as a fixture, within general words of description in a mortgage covering the entire plant; and especially is this true where the removal of the machine would tend to destroy the integrity of the plant, when considered with respect to the purpose for which it was constructed.

4. ————: **Fixtures: Property Covered by General Description.** An air compressor, built into a stone crushing plant and attached to the various parts of it in such a manner and performing such functions that its removal would destroy the integrity of the plant, is covered by a mortgage, given on the land, various apparatus, and all buildings, "being the entire crushing plant and personal property," located on said real estate, and "used in connection with the above-described crushing plant."

Appeal from Franklin Circuit Court.—*Hon. R. S. Ryors*, Judge.

AFFIRMED.

*H. M. Wilcox* for appellant.

(1) The well established rule in this state is that, "The mortgage must point out the subject matter so that a third person by its aid, together with the aid of such inquiries as it suggests may identify the property covered by it." Dierling v. Pettit, 140 Mo. App. 91; Young v. Bank, 97 Mo. App. 576; Com. Co. v. Com. Co., 93 Mo. App. 123; Bank v. Shackleford, 67 Mo. App. 475; Trimble v. Keet, 65 Mo. App. 174; Stonebreaker v. Ford, 81 Mo. 532; Evans v. Turner, 143 Mo. 638; 6 Cyclopedia of Law & Procedure, p. 1022. There is nothing to "identify" in the description of the personal property contained in this deed of trust.

There was no other compressor at Mona except the compressor in controversy. (2) Respondent took and held the deed of trust as collateral security. Therefore it acquired no title to the compressor by the deed of trust which superseded appellant's title. Book Co. v. Sheridan, 114 Mo. App. 332; Oyler v. Renfro, 86 Mo. App. 321; Hendricks v. Evans, 46 Mo. App. 313; Moore v. Simms, 47 Mo. App. 182. (3) The fact that the original lease between appellant and the Shutt Improvement Company was not recorded constitutes no defense. (a) The compressor was not included in the deed of trust held by respondent, therefore whether the lease was or was not recorded is immaterial, incompetent and constitutes no defense. See point 1. (b) Respondent received and held the deed of trust, as collateral security with notice to the Associated Quarries Company and to Mr. Hoffman that the compressor was the property of appellant until it was fully paid for, and that it was not paid for at the time. Therefore respondent was not a purchaser or creditor in good faith under section 2889, Revised Statutes 1909. Kingsland v. Drum, 80 Mo. 646; Oyler v. Renfro, 86 Mo. App. 321; Johnson v. Hutchinson, 81 Mo. App. 299; Book Co. v. Sheridan, 114 Mo. App. 332; Lee v. Bowman, 55 Mo. 400; Young v. Schofield, 132 Mo. 650; Stephenson v. Kilpatrick, 166 Mo. 266; Insurance Co. v. Smith, 117 Mo. 261; Edwards v. Railroad, 82 Mo. App. 96.

*R. H. Stevens* and *D. C. Taylor* for respondent.

The bank was a creditor of the Quarries Company and the holder and owner of the notes and deed of trust in good faith and for value and an innocent purchaser thereof. As against the bank, the lease was void not having been recorded as required by the statute. R. S. 1909, sec. 2889, vol. 1; Gentry v. Templeton, 47 Mo. App. 55; Wurmser v. Sivey, 52 Mo. App. 424; Apler v. Ruford, 86 Mo. App. 321.

NORTONI, J.—This is a suit in replevin. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

A jury being waived, the trial was had before the court, and the appeal presents but one question for consideration. The subject-matter of the controversy is a compound air compressor, which we understand to be a machine of considerable proportions, forming parcel of a stone crushing plant. It appears plaintiff leased the machine involved here to the Shutt Improvement Company, which owned and operated a stone quarry and crushing plant at Mona, Missouri. The writing in evidence touching this transaction reveals that the Shutt Improvement Company was to pay plaintiff .$2000, in various installments, for the machine, and until the final payment was made the improvement company was to enjoy the use of the machine as though it were the owner thereof. Upon the final payment being made, the title was to vest in the Shutt Improvement Company, but until then it remained in plaintiff. The machine was duly installed in the plant of the Shutt Improvement Company and employed as parcel thereof for some time. During the interim, about $1150 of the purchase price was paid thereon. Afterwards, the Associated Quarries Company, another corporation, acquired title and all of the property of the Shutt Improvement Company, including such right as it had in the compressor. The indenture of lease, which evidenced as well a conditional sale of the compressor by plaintiff to the Shutt Improvement Company, was neither filed nor recorded in the proper office for the registration of such documents. The Associated Quarries Company became involved, and applied to defendant bank for a loan of $10,000, to be used in liquidating its indebtedness. The bank proposed that it would loan the amount on the note of Mr. A. W. Hoffmann and Mr. E. W. Shutt, two of the officers of the Associated Quarries Com-

pany, provided satisfactory collateral security was given. Thereupon the Associated Quarries Company executed its note for $10,000 in favor of A. W. Hoffmann, and a deed of trust on all of its property securing the same, to be used as collateral for the loan. This note and deed of trust were pledged by Mr. Hoffmann to the defendant bank as collateral security for their note of $10,000, and the money received thereon was employed by the Associated Quarries Company in its business.

The compound air compressor is a single piece of machinery, about thirteen feet in length, five feet in width and about five feet in height. Long prior to the time the Associated Quarries Company became owner of the property and prior to the deed of trust above mentioned, this machine had been installed in the crushing plant. It rested upon a concrete foundation constructed for the purpose in the main building of the plant, and was made fast thereto by bolts sunk into the concrete. Besides, it was directly attached to the boilers of the plant which operated it and was again attached to a large iron tank. Its construction was such as to attach it in another place to the building employed for receiving and holding compressed air and from which such air was taken to operate the air drills of the quarry. While the compressor thus stood as parcel of the plant, the Associated Quarries Company executed the deed of trust thereon under which defendant claims title. This deed of trust covered, first, twenty-seven acres of land on which the quarries and plant were situate, and then described and included the crushing plant, tools and equipments as follows: "Also one crushing plant complete, two crushers, two boilers, one engine, all air and steam drills, churn drills, thirty-nine quarry and dump cars and all other tools of any and all kinds and description used in connection with the crushing plant quarry; *also all buildings being the entire crushing*

*plant and personal property located on or near the*
*above described real estate and used in connection with*
*the above described crushing plant.''*

Default having been made in the payment of the
$10,000 note, the deed of trust was foreclosed, in ac-
cordance with its terms, and defendant bank became
the purchaser of the property at the sale.  As before
said, plaintiff's lease on the compressor was not of
record, and, according to the finding of the court, the
bank was wholly without notice thereof at the time it
made the loan and accepted the note and deed of trust
as collateral therefor.   Though it be true that mere
possession of personal property of another, when no
title or interest accompanies such possession, confers
no power to mortgage the property, it is true as well
that in some cases the proposition is subject to an ex-
ception in favor of those who act in good faith in reli-
ance upon an appearance and claim of ownership.  For
instance, where a vendor has voluntarily placed a ven-
dee in possession of property as though he owned it
and thus put it in the power of the vendee to treat the
goods as his own in dealing with others, it is just, in
proper circumstances, to treat the matter as if author-
ity were given to pass the title.  In such cases, the
vendor, who has trusted the vendee, should suffer the
loss, if loss is to fall upon him or upon a purchaser or
mortgagee, who, on the credit of the property, has
parted with value to the person in possession.  Secret
liens upon property in matters of this kind are not
favored in the law, and where the vendor has, as in
this case, omitted to record his lease or mortgage,
and an innocent party has advanced money on the
appearance of ownership, it is just that the loss, if one
ensue, should fall upon the innocent party who has
rendered it possible for the other to be deceived.
Therefore, says Mr. Jones in his work on mortgages,
''A mortgage executed by one in possession of the
property as owner, although he holds possession under

an agreement that the legal title was not to pass to him until the chattels were paid for, such contract of conditional sale not having been filed for record, will take precedence over the secret lien of the seller under his conditional sale." [Jones, Mortgages (5 Ed.), sec. 116.] See the following authorities in support of the proposition thus stated: Chase v. Ingalls, 122 Mass. 381; Currier v. Knapp, 117 Mass. 324; Harrington v. King, 121 Mass. 269; Albright v. Meredith, 58 Oh. St. 194.

But, it is said, though such be true, the compressor involved here is not described in the deed of trust and, therefore, defendant is certainly without title or claim thereto. It is said that, in order to avail defendant here, the compressor must be sufficiently described to enable a third party, aided by such inquiries as the instrument itself suggest, to identify the property as that mortgaged. [See Dierling v. Pettit, 140 Mo. App. 88, 119 S. W. 524.] Though such be the rule, we are fully persuaded that it is met and satisfied by the description contained in the deed of trust when considered in connection with the law touching such matters. After describing the real estate on which the crushing plant was situate, the deed of trust describes the other property covered and included thereby as follows: "Also one crushing plant complete, two crushers, two boilers, one engine, all air and steam drills, churn drills, thirty-nine quarry and dump cars and all other tools of any and all kinds and description used in connection with the crushing plant quarry; also all buildings *being the entire crushing plant and personal property* located on or near the above described real estate and *used in connection with the above described crushing plant.*" The deed of trust here does not purport to cover any particular piece of property single and alone and describe it, but intends, instead, to cover the entire crushing plant and personal property used in connection with the above

described crushing plant. Obviously, if this large machine, made fast to the earth through being bolted in the immense concrete base constructed for that purpose, were removed and the connections severed from the boilers and the compressed air receptacle, the crushing plant would no longer be an entire one, for to dissever the plant and destroy the permanent connections for the operation of the air and steam drills described would render it no longer the complete crushing plant so well described in the deed of trust. Furthermore, this document covers and includes all personal property located on or near the above described real estate and used in connection with the above described crushing plant. Beyond question this compressor is described and included in the language above set forth, if it be possible to render it a portion of the plant by building it into the same in a permanent manner, as it appears was done. Such heavy machines, which are built into a factory by being securely and permanently bolted to a foundation set into the earth for that purpose, and otherwise so connected with the structure of the plant as to render them appurtenances to the completed mill, are regarded as fixtures within general words of description in a mortgage including the entire plant. Especially is this true when to dissever the machine would tend to destroy the integrity of the plant when considered with respect to the purpose for which it was constructed. [See Keeler v. Keeler, 31 N. J. Eq. 181; Jones, Mortgages (5 Ed.), sec. 130.]

The compressor here involved, besides being bolted into the heavy concrete foundation constructed for that purpose, was attached directly to an engine and to the boilers which operated it and again attached to a large iron tank and attached as well to the building maintained for receiving and storing compressed air, and is used for the purpose of supplying the air drills to operate the quarry. If such a machine so built into

the plant and attached to the various portions thereof is not thus converted into a portion of the mill itself, it would be difficult to determine when great machines so installed lose their identity as personal property and attain the status of a portion of the completed plant. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.